IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR ARMANDO RODRIGUEZ | § | |
| and all others similarly situated | § | |
| under 29 U.S.C. § 216(B), | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:14-CV-0334-D |
| VS. | § | |
| | § | |
| JOHN EAGLE SPORT CITY MOTORS, | § | |
| LLP f/k/a JOHN EAGLE SPORT CITY | § | |
| MOTORS, L.L.C. d/b/a JOHN EAGLE | § | |
| SPORT CITY TOYOTA, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant John Eagle Sport City Motors, LLP f/k/a John Eagle Sport City Motors,

L.L.C. d/b/a John Eagle Sport City Toyota ("John Eagle") moves to compel plaintiff Oscar

Armando Rodriguez ("Rodriguez") to arbitrate this putative collective action brought under

the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-19, for unpaid minimum

wages and related relief.  John Eagle's motion presents the questions whether Rodriguez

agreed to arbitrate his claims, whether the arbitration agreement is unconscionable under

Texas law, whether the court should stay or dismiss the case if it compels arbitration, and

whether if the court compels arbitration it should appoint the arbitrator.  For the reasons that

follow, the court grants John Eagle's motion to compel arbitration, stays the case while the

arbitration proceeds, and directs the clerk of court to close the case for statistical purposes

while the stay is in effect.  The court denies at this time John Eagle's request to appoint an arbitrator.

I

Rodriguez has been employed by John Eagle as a sales representative since 2012.  He alleges that he has worked an average of 60 hours per week, that John Eagle has paid him only sales commissions, and that, as a result of this compensation structure, during at least one-half of the weeks he has been employed, John Eagle has effectively paid him less than the minimum wage.  Rodriguez sues to recover unpaid minimum wages and related relief.

John Eagle moves under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, to compel Rodriguez to arbitrate this lawsuit, relying on an arbitration clause ("Arbitration Agreement") in his employment contract.  John Eagle also requests that the court appoint an arbitrator and dismiss the case.  Rodriguez opposes the motion and requests that, if the court grants the motion, it stay rather than dismiss the case.

II

Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. When considering a motion to compel arbitration, the court engages in a two-step process.

First, the court determines "whether the parties agreed to arbitrate the dispute."  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996) (per curiam).  "This determination

- 2 -

involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.*  In deciding whether there is a valid agreement between the parties to arbitrate, the court applies Texas law.  *See, e.g., In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding).  Under Texas law, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.  *See, e.g., Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).  In deciding whether the dispute in question falls within the scope of the Arbitration Agreement, the court applies federal law.  *See, e.g., Graves v. BP Am., Inc.*, 568 F.3d 221, 222-23 (5th Cir. 2009); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).  Under federal law, the court "resolve[s] doubts concerning the scope of coverage of an arbitration clause in a contract in favor of arbitration."  *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).  Thus the party seeking to compel arbitration need only show that the arbitration clause can plausibly be read to cover the dispute in issue.  *See id.*

Second, the court determines "whether legal constraints external to the parties' agreement foreclose[] the arbitration of those claims."  *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  In deciding whether such legal constraints exist, the court applies Texas law.  *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004).  Under Texas law,

- 3 -

the burden of proving the existence of an external legal constraint—"such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding).

"If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya*, 2013 WL 4603165, at *2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3-4).

III

The court first considers whether Rodriguez and John Eagle agreed to arbitrate this dispute. John Eagle has submitted Rodriguez's employment contract, which contains the following Arbitration Agreement:

> the company and I understand and voluntarily agree that any disputes regarding the terms of this pay plan, my employment, termination from employment (including claims of discrimination and/or harassment), or any other association [will be resolved] with binding arbitration. The arbitration proceedings shall be governed by the Federal Arbitration Act, and carried out in conformity with the procedures of the Texas Arbitration act. Although I understand that signing this arbitration agreement is not required as a condition of my employment, I desire to take advantage of the benefits of arbitration and, being that this is mutual agreement to arbitrate, understand that the Company and I give up the right to a trial by jury and instead will have our claims resolved by a retired Texas Superior Court Judge.

D. Mot. Compel Ex. 1 at 4 (bold font omitted; bracketed material added).  The Arbitration Agreement is found immediately above the signature line of the employment contract and is printed in bold font.

"Arbitration agreements are interpreted under traditional contract principles." *In re Guggenheim Corporate Funding, LLC*, 380 S.W.3d 879, 886 (Tex. App. 2012, orig. proceeding).  A contract is ambiguous "if it is subject to 'two or more reasonable interpretations after applying the pertinent rules of construction.'" *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding) (quoting *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).  "Inartful drafting does not alone render a contractual provision ambiguous." *Id.*  A purported arbitration agreement can be ambiguous because it does not clearly evince the parties' intent to arbitrate certain claims.  It can also be ambiguous because it does not clearly evince the scope of the parties' agreement.  *Cf. id.* (noting that trial record did not indicate which of these two kinds of ambiguity inhered in agreement).  The court treats each issue separately.

Disregarding the first sentence of the Arbitration Agreement,[1] which is obviously incomplete,[2] the balance of the agreement unambiguously evinces the parties' intention to

---

[1]Although this portion of the memorandum opinion and order does not rely on the Arbitration Agreement's first sentence, considering it would only strengthen John Eagle's argument.  Despite the fact that the first sentence is incomplete, it clearly evinces an intention to arbitrate certain claims.

[2]It has been necessary for the court to supply some words—including a verb—to the first sentence for it to be a complete sentence.

arbitrate certain claims. The agreement provides that there will be arbitration proceedings governed by the FAA and carried out in conformity with the procedures of the Texas Arbitration Act ("TAA"); that Rodriguez "desire[s] to take advantage of the benefits of arbitration" even though he is not required to sign the arbitration agreement as a condition of his employment, and describes the provision as a "mutual agreement to arbitrate"; and that Rodriguez and John Eagle each "give up the right to a trial by jury" and "will have our claims resolved by a retired Texas Superior Court Judge." D. Mot. Compel Ex. 1 at 4. The court holds that John Eagle has met its burden of showing that there is a valid agreement to arbitrate between the parties. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992) (holding that arbitration agreements may be proved through summary proceedings involving, *inter alia*, affidavits and discovery materials).

IV

The court turns next to the question whether Rodriguez's FLSA claim falls within the scope of the Arbitration Agreement.

Rodriguez does not argue that this dispute falls outside the scope of the Arbitration Agreement. Because the Arbitration Agreement contains "any dispute" language, the court concludes that it is a broad arbitration clause. *See In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) ("We have held that arbitration clauses containing the 'any dispute' language, such as the one presently before us, are of the broad type."). Accordingly, to avoid arbitration on the grounds that his FLSA claim is not covered

- 6 -

by the Arbitration Agreement, Rodriguez must adduce "forceful evidence" in support. *See Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985) (quoting *Nat'l R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.*, 551 F.2d 136, 140 (7th Cir. 1977)). He has not done so.

V

The court now considers whether Rodriguez has shown that legal constraints external to the parties' agreement render it unenforceable.

A

Rodriguez maintains that compelling him to arbitrate his FLSA claim will deprive him of his non-waivable statutory right to collect liquidated damages. FLSA rights cannot be prospectively waived. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (stating that "FLSA rights cannot be abridged by contract or otherwise waived"); *Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 257 (5th Cir. 2012) ("FLSA substantive rights may not be waived[.]"). But the decision to resolve claims through arbitration does not waive substantive rights under a statute *per se*. *Cf. 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265-66 (2009) (stating that "[t]he decision to resolve . . . claims [under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*] by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination"). Thus the existence of an arbitration agreement, without more, is not evidence of waiver. To carry his burden, Rodriguez must at least point to some

- 7 -

evidence that forcing him to arbitrate his FLSA claim will cause him to waive his right to collect unliquidated damages, but he has failed to do so.

Accordingly, the court holds that Rodriguez has failed to carry his burden of showing that the Arbitration Agreement is unenforceable because it will cause him to lose his non-waivable FLSA rights.  *Cf. Pacheco v. PCM Constr. Servs., LLC*, 2014 WL 145147, at *6 (N.D. Tex. Jan. 15, 2014) (Lindsay, J.) (dismissing claim on same grounds).

B

Rodriguez also posits that the Arbitration Agreement is substantively unconscionable because pursuing his FLSA claim in an arbitral forum will impose impermissible and prohibitive costs on him.

Under Texas law, to demonstrate that the agreement is substantively unconscionable on this ground, Rodriguez must show that it will be more expensive to pursue his claim in an arbitral forum than in a judicial forum.  *See In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 894-95 (Tex. 2010) (orig. proceeding) ("[A] comparison of the total costs of the two forums is the most important factor in determining whether the arbitral forum is an adequate and accessible substitute to litigation.").  Rodriguez offers no evidence in this regard.  The court holds that Rodriguez has failed to carry his burden of showing that enforcing the Arbitration Agreement will impose impermissible and prohibitive costs.

C

Rodriguez also maintains that the Arbitration Agreement is procedurally unconscionable because it is incomprehensible.[3] Specifically, Rodriguez argues that the first sentence of the Arbitration Agreement is vague and ambiguous, that the second sentence fails to lend guidance regarding the statute or procedures that will govern the arbitration provision, and that the third sentence appoints an arbitrator—"a retired Texas Superior Court Judge"—who does not exist. D. Mot. Compel Ex. 1 at 4.

Under Texas law, "procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding). Rodriguez cannot prevail merely by showing that the Arbitration Agreement is vague or ambiguous. To succeed on a claim of procedural unconscionability, an employee who has had the opportunity to read an arbitration agreement and signs it must show that his employer engaged in fraud, misrepresentation, or

---

[3]The subheading of this section of Rodriguez's brief states that the "arbitration agreement is *substantively* unconscionable." P. Resp. 3 ¶ 5 (emphasis added; uppercase letters omitted). But in the body of this section, he asserts that "[t]he arbitration agreement is *procedurally* unconscionable." *Id.* (emphasis added). Rodriguez then cites *Billingsley v. Citi Trends, Inc.*, 948 F.Supp.2d 1287, 1293-94 (N.D. Ala. 2013), for a proposition based on the doctrine of *procedural* unconscionability. *See id.* Accordingly, the court construes this section of Rodriguez's brief as asserting a claim based on *procedural* rather than *substantive* unconscionability. Rodriguez also notes that a court may consider the conspicuousness of an arbitration agreement in determining whether it is procedurally unconscionable. *Id.* But Rodriguez does not again raise the issue of the Arbitration Agreement's conspicuousness, and his arguments do not relate to that issue. Accordingly, the court construes Rodriguez's argument as based on the Agreement's comprehensibility rather than its conspicuousness.

deceit, *see id.* at 679 (summarizing Texas Supreme Court cases to this effect), or that

enforcing the agreement would lead to unconscionable surprise or oppression, *see id.*; *see*

*also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir. 2002) ("The only

cases under Texas Law in which an agreement was found procedurally unconscionable

involve situations in which one of the parties appears to have been incapable of

understanding the agreement."). In *In re Turner Brothers Trucking Co.*, 8 S.W.3d 370 (Tex.

App. 1999, orig. proceeding), a Texas appellate court held that an arbitration agreement was

procedurally unconscionable because even the employer could not understand it, and the

employee suffered from learning disabilities that made it difficult for him to understand even

the nature of the agreement. *See id.* at 377. In *In re Ledet*, 2004 WL 2945699 (Tex. App.

2004, orig. proceeding), a Texas appellate court reached a different conclusion because the

employee failed to present evidence that the employer did not understand the agreement, and

the employee admitted that he did not seek help in understanding it. *See id.* at *6.

Rodriguez does not allege that John Eagle failed to give him time to read the

employment contract (which includes the Arbitration Agreement), or that John Eagle

otherwise engaged in fraud, misrepresentation, or deceit when it presented the document to

him. Thus the court assumes that Rodriguez knew the contents of the Arbitration Agreement.

*See, e.g., EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (per

curiam) (applying presumption where party signed agreement). Rodriguez has not presented

evidence that the John Eagle employees who presented the employment contract to him could

not understand the Arbitration Agreement because the first sentence was vague or ambiguous. He has failed to adduce any evidence that he sought help from John Eagle's employees in interpreting and understanding the agreement. Rodriguez has also failed to adduce any evidence that he lacked the functional capacity to read and understand the Arbitration Agreement. Even if the court assumes *arguendo* that the first sentence is ambiguous rather than merely incomplete, Rodriguez should have been able to understand from the balance of the Arbitration Agreement that he was agreeing to arbitrate some or all of his employment-based claims against John Eagle.

Rodriguez contends that the second sentence fails to lend guidance regarding the statute or procedures that will govern the arbitration provision. The court disagrees. The Arbitration Agreement explicitly provides that "[t]he arbitration proceedings shall be governed by the [FAA], and carried out in conformity with the procedures of the [TAA]." D. Mot. Compel Ex. 1 at 4. Rodriguez does not explain why these provisions are insufficient.

Rodriguez also posits that the third sentence appoints an arbitrator who does not exist (Texas judges do not hold the title "Superior Court" judge). Under both federal and Texas law, this court has the power to appoint an arbitrator when the method specified by the arbitration agreement for selecting an arbitrator fails. *See* 9 U.S.C. § 5; Tex. Civ. Prac. & Rem. Code Ann. § 171.041(b)(2) (West 2011). Rodriguez does not explain why the Arbitration Agreement's failure to provide for a suitable method for selecting an arbitrator

renders the agreement procedurally unconscionable.

The court holds that Rodriguez has failed to carry his burden of showing that the Arbitration Agreement is procedurally unconscionable on the ground that it is incomprehensible.

## VI

John Eagle requests that the parties be allowed to submit a list of proposed arbitrators, from which the court should select an arbitrator.  The court denies this request.

"'[T]he FAA expressly favors the selection of arbitrators by parties rather than courts.'"  *BP Exploration Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 490 (5th Cir. 2012) (quoting *Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir. 2009)). Courts have "very limited" jurisdiction under the FAA to intervene in the arbitral process before an award.  *Id.* at 490-91.

> 9 U.S.C. § 5 authorizes a court to intervene to select an arbitrator upon application of a party, in three instances: (1) if the arbitration agreement does not provide a method for selecting arbitrators; (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method; or (3) if there is a lapse in the naming of an arbitrator or arbitrators.

*Id.* at 491 (internal quotation marks omitted).[4]  The TAA authorizes a court to select an

---

[4]9 U.S.C. § 5 provides, in relevant part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein,

arbitrator if, *inter alia*, the agreed method of appointing an arbitrator "fails or cannot be followed." Tex. Civ. Prac. & Rem. Code Ann. § 171.041(b)(2). "[T]he FAA 'preempts state statutes to the extent they are inconsistent with that Act.'" *In re D. Wilson Constr. Co.*, 196 S.W.3d at 780 (quoting *Jack B. Anglin Co.*, 842 S.W.2d at 271).

John Eagle contends that the court is authorized to appoint an arbitrator because the method specified in the Arbitration Agreement for choosing an arbitrator cannot be followed. But John Eagle has failed to show that, once the court issues this ruling and compels Rodriguez to arbitrate his FLSA claim, the parties cannot agree on an arbitrator. If, after this decision is issued, a basis can be shown under 9 U.S.C. § 5 for the court to select an arbitrator, *see BP Exploration Libya*, 689 F.3d at 491, John Eagle may move anew for this relief.

VII

John Eagle requests that the court dismiss this case with prejudice. Rodriguez opposes this request and moves the court to enter a stay instead.

Section 3 of the FAA provides that when a claim is filed in a federal court and the

----

or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]

court concludes that the claim is referable to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  District courts have broad discretion to decide whether to stay a case pending arbitration or to dismiss it.  *See Apache Bohai Corp. v. Texaco China, B.V.*, 330 F.3d 307, 311 (5th Cir. 2003) (noting that appellant was "unable to cite a single case in which [the Fifth Circuit] held that a district court abused its discretion by staying rather than dismissing proceedings pending arbitration"); *see also id.* at n.9 (explaining that *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992), stands for the proposition that a district court does not abuse its discretion by choosing to dismiss a case, not that it must do so).

The court in its discretion orders the case stayed and directs the clerk of court to close the case for statistical purposes while the stay is in effect.

*   *   *

For the reasons explained, the court grants John Eagle's motion to compel arbitration and stays this case.  The court directs the clerk of court to close the case for statistical purposes while the stay is in effect.  A party may move the court to reopen the case statistically and lift the stay for cause shown.[5]

**SO ORDERED**.

June 10, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[5]Because the court is staying this case, it denies without prejudice as moot John Eagle's motion to extend time to submit the scheduling proposal.

- 15 -